IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRENT WARREN, #Y20422, <br><br>    Plaintiff, <br><br> v. <br><br> IDOC, LT. WALL, LT. HECK, OFFICER HALE, OFFICER SPENCER, JOHN DOE 1, JOHN DOE 2, JESSIE REID, JEFF DENISON, DIANA SKOUCH, ROBBERT JEFFREYS, and JOHN DOE 3, <br><br>    Defendants. | Case No. 20-cv-01295-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Trent Warren, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Warren claims that he was placed in segregation without receiving an investigatory or disciplinary ticket and denied due process at the disciplinary hearing. In segregation, he was kept in his cell twenty-four hours a day a majority of the time and unable to leave to exercise or socialize with other inmates. Warren also claims that proper COVID-19 safety procedures were not implemented at Pinckneyville while he was in segregation and after his release. He requests monetary damages and injunctive relief.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v.*

*Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Warren alleges the following: After being involved in an altercation with another inmate, Warren was placed in segregation on February 26, 2020, at Lawrence Correctional Center. (Doc. 1, p. 9). The following day he was transferred to Pinckneyville in a segregation to segregation transfer. (*Id.*). He did not receive a disciplinary report informing him of the reason for investigation and placement in segregation, as is required by IDOC regulation. (*Id.* at p. 10). Warren has been designated as seriously mentally ill (SMI), and he was not evaluated by a mental health professional prior to placement in segregation. A process also required by IDOC regulations. (*Id.* at p. 10).

On March 10, 2020, Warren was called to a hearing over a disciplinary ticket that he never received or signed. (Doc. 1, p. 10). He was not notified of the hearing or the charges against him in advanced or allowed to prepare a defense. (*Id.* at p. 11). Warren was also not evaluated by the mental health department for a recommendation prior to the hearing. (*Id.* at p. 12). Neither was Warden Denison contacted to review his SMI status. (*Id.*). Warren informed the hearing committee members, Heck and Skouch, of these due process violations, and asked for a continuance. (*Id.* at p. 11, 12, 15). Heck and Skouch proceeded with the hearing anyways. (*Id.* at p. 11).

At the hearing, Warren was shown the disciplinary ticket filled out by Officer Spencer. (Doc. 1, p. 11). Spencer had forged Warren's signature and falsely reported that Warren was served a copy of the ticket on March 5, 2020. Spencer also wrongly and excessively charged Warren with "assault to an offender." (*Id.*). The charge was excessive because Warren had not used a weapon or substance during the altercation with the other inmate, as required for an "assault to an offender" charge. Rather, Warren should have been charged with "fighting," which is defined as "fighting with another person in a manner that not likely to cause serious bodily harm to another and that

does not involve a weapon." (*Id.* at p. 11-12). Warren informed Heck and Skouch of the false information contained in the ticket. (*Id.* at p. 11). Heck and Skouch asked Warren how he pleaded, and he stated not guilty. They then asked Warren to leave the room and stated, "we are all done here." (*Id.* at p. 12).

Following the hearing, on March 17, 2020, Heck came to Warren's cell and gave him a copy of the disciplinary ticket. Warren was found guilty and sanctioned with two months segregation, two months C-grade status, and two months commissary restrictions. (Doc. 1, p.13, 64). Warren wrote a grievance regarding the proceedings. (Doc. 1, p. 13). Warden Denison found the grievance "justified" and ordered for Warren to be released from segregation on April 15, 2020. (*Id.*). He was not released from segregation, however, until April 21, 2020. (*Id.* at p. 9, 13, 14).

While in segregation, Warren was not allowed to exercise or have social interaction with other inmates for thirty-eight days. (Doc. 1, p. 27). Because Warren is SMI, prison staff is required to give him the opportunity to recreate outside of the cell for at least 8 hours per week, "distributed in at least 2 increments." (*Id.* at p. 15).

On March 14, 2020, he was taken to the segregation yard. (Doc. 1, p. 16, 25). The weather that day was freezing rain with an 18 degree windchill. Warren was only wearing a jumpsuit and state issued shoes. He became "soaked to the bone" and "shivered violently" from the cold wind and rain. His shoes were also completely soaked through. John Doe 1 and Correctional Officer Hale knew it was freezing rain and that the yard was flooded, but forced Warren to stay out in the cold conditions for two and half hours with no shelter where he could stand to protect himself from the elements.

Officer Hale stood in the "dog house," which has a heated, and laughed saying "you'll think twice about coming outside next time." Hale also stated, "this is what you get for making me baby sit you…you have to stay outside the entire time." (Doc. 1, p. 16). After an hour, Warren

informed Hale that he needed to use the restroom. Hale told Warren that he would have to wait until yard time was over. (*Id.* at p. 25). Hale refused to call another officer to take Warren into the bathroom, and there were no toilet facilities in the segregation yard. Warren was forced to hold his urine for an hour and a half, and before it was time to go inside, he urinated on himself because of his violent shivering. (*Id.*). When it was time come back inside, Warren could barely walk and needed assistance. (*Id.* at p. 16). He states he was on the verge of frostbite and hypothermia and returned to a cell with no heat. (*Id.*).

During his time in segregation and after his release from segregation, proper COVID-19 safety protocols were not implemented by Warden Denison and IDOC Director Jeffreys.

### PRELIMINARY DISMISSALS

Warren names Officer Harris and Nurse Jane Doe in the statement of claim section of the Complaint, but they are not listed in the case caption as defendants. (Doc. 1, p. 18, 20). The Court will not treat parties not listed in the caption as defendants, and any claims against them are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

### DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Fourteenth Amendment claim against Heck, Skouch, Spencer, Denison, and Major John Doe 3 for denying Warren due process prior to his placement in segregation.

**Count 2:** Eighth Amendment claim against Reid, Wall, Sergeant John Doe 2, Jeffreys, and Denison for denying Warren the ability to exercise and social interaction with other inmates.

**Count 3:** Eighth Amendment claim against Hale, John Doe 1, Denison, Jeffreys, and IDOC for forcing Warren to remain outside in extreme weather conditions for two and a half hours without shelter and restroom facilities.

>    **Count 4:**      Eighth Amendment claim against Wall, Denison, and Sergeant John Doe 2 for failing to implement proper COVID-19 safety protocols.
>
>    **Count 5:**      Health Insurance Portability and Accountability Act (HIPAA) claim against Denison.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim based on a false disciplinary ticket and the related disciplinary proceedings, the Court undertakes a two-part analysis. *Id*. The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)).

Generally, prisoners "do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary." *Smith v. Akpore,* 689 F. App'x 458, 460 (7th Cir. 2017). *See also Hardaway v. Meyerhoff,* 734 F.3d 740, 743 (7th Cir. 2013). A protected liberty interest is triggered only when the segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn*, 933 F.3d 705, 721 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). *See also Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011). In order to determine if a sentence of segregation amounts to an atypical and significant

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

hardship, the Court looks "to both the duration of the segregation and the conditions endured." *Lisle*, 933 F.3d at 721 (citing *Marion v. Columbia Corr. Inst.,* 559 F. 3d 693, 697 (7th Cir. 2009)).

Here, Warren has not sufficiently pled a claim for violation of his due process rights. His time in segregation was only for 55 days, and a "confinement of that length does not implicate a liberty interest." *Obriecht v. Raemisch,* 565 F. App'x 535, 540 (7th Cir. 2014) (finding that 78 days in alleged deplorable conditions was not a "atypical and significant hardship" as compared to prison life generally"). *See also Marion,* 559 F. 3d and 698 (noting that 6 months in segregation, without additional facts, did not trigger due process rights); *McCoy v. Atherton,* 818 F. App'x 538, 541-42 (7th Cir. 2020) (holding that 3 months in segregation in a dirty cell near physically and mentally ill inmates did not impose an atypical and significant hardship).

Additionally, the facts alleged regarding the conditions he endured while in segregation were not "exceptionally harsh." *Hardaway,* 734 F. 3d at 743. Warren claims that he was moved to a dirty cell, demoted to C-grade status, and his telephone, visitation, access to education programs, library, commissary, and dayroom privileges were restricted. He was also not able to attend yard, walk to meals, exercise outside of his cell, or shower every day. He states that for a majority of his time in segregation, he was kept in his cell for 24 hours a day. (Doc. 1, p. 15).

These conditions do not come close to the "atypical and significant hardship in relation to the ordinary incidents of prison life" that would implicate a liberty interest. Warren was given disinfectant to clean his cell one time in March, and then once to twice per week in the month of April. (*Id.* at p. 19). The entire facility, not just the segregation unit, went on lockdown on March 22, 2020, in response to the COVID-19 pandemic, and many of the privilege restrictions described by Warren are not liberty interests protected by the Fourteenth Amendment. *See Thomas v. Ramos*, 130 F. 3d 754, 762 n. 8 (7th Cir. 1997) (there is no protected liberty interest implicated in demotion to C-grade status and loss of commissary privileges); *Woody v. Zatecky*, 594 F. App'x 311, 312

(7th Cir. 2015) ("courts have held that a loss of visitation privileges—including contact visits—is not an atypical and significant hardship") (citations omitted). *See also Hardaway,* 734 F.3d at 74; *Obriecht,* 565 F. App'x at 540 (7th Cir. 2014). Based on these allegations, due process was not required prior to placing Warren in segregation from February 26, 2020 through April 21, 2020.

Warren claims that because of his disciplinary sanctions he is unable to request for "good time restoration." (Doc. 1, p. 17). While a loss of good time credits implicates a liberty interest, claims that imply that an inmate's good time credits should be restored cannot be pursued in a Section 1983 action until the good time is restored through other means. *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994); *Edwards v. Balisok*, 520 U.S. 641, 646-648 (1997); *McAtee v. Cowan,* 250 F.3d 506, 508 (7th Cir. 2001). Warren has not alleged that the good time credit has been restored, so he cannot pursue his claim in this lawsuit.

Finally, to the extent Warren is attempting to assert due process claims against Defendants for failing to follow the Illinois Administrative Code or the settlement agreement in the class action case *Rasho v. Baldwin*, these claims also fail. He cannot "assert a liberty interest arising from the procedures adopted by the parties in *Rasho* or from the Illinois statute and administrative directive which…resulted from that case." *James v. Pfister*, 708 F. App'x 876, 879 (7th Cir. 2017) ("Mentally ill inmates are not constitutionally guaranteed heightened procedural protections, so any state-created liberty interest for mentally ill inmates is subjected to the Due Process Clause only if it passes the test in *Sandin*."). *See also Lilly v. Jess,* 189 F. App'x 542, 543 (7th Cir. 2006) (Section 1983 is "limited to redressing claims based on federal law (including the Constitution)").

For these reasons, Count 1 is dismissed without prejudice.

**Count 2**

Warren claims that while in segregation, he experienced cruel and unusual punishment because he was denied the right to social interaction with other inmates and exercise. (Doc. 1,

p.15). He asserts that at Pinckneyville inmates in segregation must have a double-cell permit to have a cellmate or go to yard. (*Id.* at p. 27). Warren claims that Counselor Reid did not file a double celling permit until April 6, 2020, which resulted in him only attending yard one time in March and being kept in his cell for 24 hours a day for a majority of the time. Sergeant John Doe 2 would tell Warren that he was not allowed to attend yard until the double-cell permit had been approved, and Lieutenant Wall did not authorize him to go to yard. (*Id.* at p. 15, 28). Because he was denied yard time and social interactions, he states he suffered from insomnia, hallucinations, severe anxiety, loss of motor skills, loss of social skills, severe depression, thoughts of suicide, and weight loss.

As this stage, Warren has sufficiently pled an Eighth Amendment claim against Reid, Wall, and John Doe 2 for depriving Warren of yard time and keeping him in his cell for lengthy periods of time. *See Winger v. Pierce,* 325 F. App'x 435, 436 (7th Cir. 2009). Count 2 will proceed as to Reid, Wall, and John Doe 2.

Count 2 is dismissed, however, as to Jeffreys and Denison. Warren states that Jeffrey's and Denison violated his constitutional rights to be protected from cruel and unusual punishment. (Doc. 1, p. 28). Warren has not pled any facts to support this allegation, and a recitation of the elements is not adequate to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court not required to accept as true "legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

Finally, Warren also claims that when he was transferred to segregation at Pinckneyville, the cell was covered in a black "soot" type substance making the cell unhealthy and unsanitary. (Doc. 1, p. 18). But he does not assert any knowledge or personal involvement in the cell conditions on the part of any of the listed Defendants. Accordingly, to the extent he is asserting an Eighth Amendment claim regarding his dirty cell, this claim is dismissed without prejudice.

### Count 3

Warren's claims regarding being forced to spend two and half hours in the yard despite extreme weather conditions and the lack of bathroom facilities are sufficient for Count 3 to proceed against Officer Hale and John Doe 1. *See Dixon v. Godinez,* 114 F. 3d 640, 642 (7th Cir. 1997).

Warren further asserts that Warden Denison, Director Jeffreys, and IDOC are also responsible for constitutional violations because they did not ensure there was a shelter and restroom facilities on the segregation yard. (Doc. 1, p. 16). He states that all Illinois prisoners are supposed to be provided restrooms on all yards. (*Id.* at p. 25). Warren also claims that Denison is liable because Warren was unable to purchase more durable shoes from the commissary due to the disciplinary sanction rescripting commissary privileges. These claims are dismissed.

There is no supervisory liability in a Section 1983 action; thus, to be held individually liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Warren has not included any allegations that Denison or Jeffreys had personal involvement in or actual knowledge of the events that took place on the segregation yard on March 14, 2020, and they cannot be held liable because they are in supervisory positions. Additionally, as previously mentioned, Section 1983 protects individuals from constitutional violations, not violations of state laws or departmental regulations requiring restroom facilities and shelters in yard areas. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir.2003); *see also Ashley v. Snyder*, 739 N.E.2d 897, 902 (Ill.App.Ct. 2000) (prison regulations were "never intended to confer rights on inmates or serve as a basis for constitutional claims").

Finally, IDOC is not a "person" under Section 1983 and is not subject to suit. Accordingly, Count 3 is dismissed without prejudice as to Denison and Jeffreys and with prejudice as to IDOC.

**Count 4**

Warren claims that while in segregation and after his release, proper COVID-19 safety protocols were not implemented. Initially, he was not given adequate cleaning supplies to clean and disinfect his cell or gloves. In April 2020, inmates were allowed to dip a rag into a bucket of disinfectant once to twice a week. Warren states that this measure, however, was insufficient. It contributes to cross contamination, and he was not given enough disinfectant to clean his entire cell. Additionally, correctional officers were not directed to wear masks until April 1, 2020, and inmates were not given masks until May 4, 2020. (Doc. 1, p. 18-19, 21). His meals were served on hard trays, rather than Styrofoam trays, and the telephones were not disinfected after each use. (*Id.* at p. 22). While in segregation, his chuckhole was opened several times a day exposing his living area to contamination.

When Warren was released from segregation, he was forced to share a cell with another inmate, making it impossible to practice social distancing. (Doc. 1, p. 21). He was also unable to socially distance when he came out of his cell for phone time, medical line, and dayroom. Warren states that because of the pandemic, Warden Denison limited yard time to 90 minutes every 2 weeks. Because he is SMI, he requires more recreation and exercise than inmates who do not have an SMI designation.

Warren claims that Lieutenant Wall, Warden Denison, and Sergeant John Doe 2 are in charge of segregation and for ensuring that inmates have cleaning supplies and live in sanitary environments. (Doc. 1, p. 18). They are aware of the nationwide pandemic and failed to protect inmates by providing them with adequate disinfectant, cleaning supplies, gloves, and masks.

These claims are also dismissed. While the presence of COVID-19 in the prisons presents a substantial risk of serious harm, Warren has failed to plead that Defendants acted with "total unconcern for [his] welfare." *Rosario v. Brawn,* 670 F. 3d 816, 821 (7th Cir. 2012). To the

contrary, while Warren believes the steps taken were inadequate, the Complaint alleges that policies were implemented to mitigate the effects of COVID-19. The facility was put on lockdown on March 22, 2020, disinfectant was passed out once to twice a week, masks were eventually made available to staff and inmates, and yard time was reduced. Warren does not allege facts to support the assertion that Defendants' response to COVID-19 rose to the level of deliberate indifference.

As for his claim that he was denied yard time which exasperated his mental health condition, there are no allegations that Defendants were informed of a serious risk to his health due to the reduction in yard time after he was released from segregation, and then ignored such risk. Additionally, as discussed, Denison cannot be liable under Section 1983 for solely not complying with certain state regulations regarding SMI inmates and recreation time.

**Count 5**

Warren claims that while he was in segregation, because of the pandemic, nurses doing sick call rounds would conduct their evaluations with the cell door shut and speak through the chuckhole door. (Doc. 1, p. 20). After being left in the yard in the extreme weather for two and half hours, Warren experienced shortness of breath and a burning sensation in his lungs. When the nurse came by to examine him, he was forced to share his medical information through the chuckhole, and the appointment was not confidential as required under HIPAA. He claims that Warden Denison implemented this policy of requiring medical visits by the nurses to be conducted with the cell door shut and is responsible for violating his HIPAA rights.

The Health Insurance Portability and Accountability Act ("HIPAA") prohibits the disclosure of a patient's medical information without his consent. *See* Pub. L. No. 104-191, 110 Stat. 1936 (1996). However, the statute does not create a private right of action to enforce this substantive prohibition, and the Seventh Circuit has held that HIPAA does not confer individual enforcement rights, either express or implied. *See Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015

Page 11 of 15

(7th Cir. 2019). *See also Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010). Therefore, Count 5 against Denison for violating Warren's rights under HIPAA is dismissed with prejudice.

### MOTION TO SUBSTITUTE

The Court construes the motion to substitute requesting a new judge as a motion for recusal. (Doc. 18). Warren is seeking a new judge so that the case can receive a prompt preliminary review.

Recusal or disqualification of a judge from a case is governed by 28 U.S.C. § 455. A party's dissatisfaction with the rate of progress in the case is not one of the grounds for disqualification. Warren has not pointed to any personal bias, prejudice or issue of impartiality on the part of the undersigned, and so, the motion is denied.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** is **DISMISSED without prejudice. COUNT 2** will proceed against Reid, Wall, and John Doe 2, but is **DISMISSED without prejudice** as to Jeffreys and Denison. **COUNT 3** will proceed against Hale and John Doe 1, but is **DISMISSED without prejudice** as to Jeffreys and Denison and **DISMISSED with prejudice** as to IDOC. **COUNT 4** is **DISMISSED** without prejudice. **COUNT 5** is **DISMISSED with prejudice.**

Because there are no surviving claims against them, IDOC, Heck, Spencer, Skouch, Denison, Jeffreys, and John Doe 3, they are **DISMISSED** from this case, and the Clerk of Court is **DIRECTED** to terminate them from the docket.

The Clerk of Court is **DIRECTED** to **ADD** the current warden of Pinckneyville, David Mitchell, as a defendant in his official capacity only for the purposes of responding to discovery aimed at identifying the John Doe Defendants. Once Defendants have filed answers to the Complaint, the Court will enter a scheduling order setting dates and guidelines for discovery.

Warren will then have the opportunity to engage in limited discovery to ascertain John Does' identities. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Once the names of these individuals are discovered, Warren shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

Because Warren's claims involve his mental health conditions, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Motion to Substitute (Doc. 18) is **DENIED.**

The Clerk of Court shall prepare for Wall, Hale, Reid, Mitchell (official capacity only), and John Does 1 and 2 (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Warren, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

With the exception of Warden Mitchell, Defendants are **ORDERED** to file an appropriate

responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order. <u>Mitchell need not answer or otherwise respond to the Complaint as he is only in this case for the purpose of identifying the John Doe defendants. He must only enter his appearance and will receive further instructions on discovery at a later date.</u>**

Service shall not be made on the unknown defendants, John Doe 1 and John Doe 2, until such time as Warren has identified him or her by name in a properly filed motion for substitution. Warren is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

If judgment is rendered against Warren and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Warren is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 12/20/2021**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.